1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| B & S HOLDINGS, LLC, a Washington limited liability company,<br><br>                              Plaintiff,<br><br>      v.<br><br>BNSF RAILWAY COMPANY,  a Delaware corporation, et al.,<br><br>                              Defendant. | NO:  12-CV-0387-TOR<br><br>ORDER ON MOTION TO REMAND AND MOTION TO DISMISS |

        BEFORE THE COURT are Plaintiff's Motion to Remand, ECF No. 3, and

Defendant BNSF Railway Company's Motion to Dismiss, ECF No. 10.  The

motions were heard without oral argument on August 6, 2012. The Court has

reviewed the motions, the responses, the reply and supporting documentation and

is fully informed.

//

//

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 1

BACKGROUND

B & S Holdings, LLC ("B & S Holdings") brought this suit against BNSF Railway Company ("BNSF"), and others, seeking to obtain fee simple title to part of BNSF's property that it owns in fee simple along its rail line located in Wenatchee, Washington.  ECF No. 1.  BNSF removed this action to federal court on the basis of federal question jurisdiction. ECF No. 1 at 2.  No other party has yet appeared.  B & S Holdings has now moved for an order remanding this case back to the Chelan County Superior Court for the State of Washington on the grounds that no federal question is presented.  BNSF cross moves for dismissal on the ground that exclusive jurisdiction resides with the Surface Transportation Board under the express terms of a federal statute.

According to the complaint, B & S Holdings owned certain property adjoining property owned by BNSF in Chelan County, Washington.  ECF 1-1 at 18-19.  On March 8, 2012, B & S Holdings sold its property to the Wenatchee School District No. 246.  *Id*.  B & S Holdings contends that its formerly owned building and fenced parking area encroach on the adjacent BNSF property.  *Id*. at 20.  B & S Holdings claims that it has established adverse possession of this property by reason of its encroachment and seeks quiet title to the same for the benefit of its successor in interest, Wenatchee School District No. 246.  *Id*. at 20-21.

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 2

**DISCUSSION**

The question before the Court is whether removal of this action to this Court was valid due to the complete preemption of Plaintiff's state law adverse possession cause of action under the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), Pub.L. No. 104-88, 109 Stat. 803.  In the alternative, the Court must decide whether there is diversity jurisdiction over the plaintiff's state adverse possession claim which would support the removal of this action.  Finally, if the Court has jurisdiction, the Court must then decide whether it should yield to the Surface Transportation Board to decide the underlying controversy.

**I.     REMOVAL**

A defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction.  28 U.S.C. § 1441.  However, "'[i]t is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (*quoting Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (alterations in original).  The "strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper," and the court resolves all ambiguity in favor of remand to state

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 3

court.  *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992) (per curiam) (internal quotation marks omitted).

## A. FEDERAL QUESTION

The threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court.  *Ansley v. Ameriquest Mortgage Co*., 340 F.3d 858, 861 (9th Cir. 2003) (*quoting Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir.1998)).  In determining federal question jurisdiction, the well-pleaded complaint rule provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The plaintiff is the master of his complaint and may avoid federal question jurisdiction by relying exclusively on state law.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

"A case 'arises under' federal law within the meaning of § 1331 ... if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006) (*quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983) (brackets omitted)).  It is settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 4

the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 -1043 (9th Cir. 2009) (internal quotation marks and citations omitted); *see also Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. at 14 ("since 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption.").

One exception to the statutory "well-pleaded complaint" rule is when Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." M*etropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987); *see also Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560 (1968). Under complete preemption, if "the pre-emptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule,'" then "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

> The question in complete preemption analysis is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law." *[New Orleans & Gulf Coast Ry. Co. v.] Barrois*, 533 F.3d [321,] [] 331; *see also*

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 5

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

*Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). Here, Plaintiff's complaint relies exclusively on state property law, specifically, Washington State's adverse possession law.  Accordingly, if not for diversity jurisdiction, discussed infra, only complete preemption can provide federal jurisdiction sufficient to support removal in this case.

The Interstate Commerce Act, ch. 104, 24 Stat. 379 (1887), which, as amended, still governs federal regulation of railroads, has been recognized as "among the most pervasive and comprehensive of federal regulatory schemes." *City of Auburn v. United States*, 154 F.3d 1025, 1029 (9th Cir. 1998) (*citing Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981)).   For more than a century, the Supreme Court has made it clear that under the U.S. Constitution's Supremacy Clause (Art. VI, cl. 2), state laws or regulations that are inconsistent with the agency's plenary authority or with the Congressional policy reflected in the Interstate Commerce Act are preempted. *See id.*

The jurisdiction of the [Surface Transportation] Board over--

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 6

> (2) the construction, acquisition, operation, abandonment, or
> discontinuance of spur, industrial, team, switching, or side
> tracks, or facilities, even if the tracks are located, or
> intended to be located, entirely in one State,
>
> *is exclusive. Except* as *otherwise provided in this part, the remedies
> provided under this part with respect to regulation of rail
> transportation are exclusive and preempt the remedies provided under
> Federal or State law*.

49 U.S.C. § 10501(b) (emphasis added).

> As the agency authorized by Congress to administer the [ICCTA], the
> Transportation Board is uniquely qualified to determine whether state
> law should be preempted by the [ICCTA]." *Emerson v. Kansas City S.
> Ry. Co.*, 503 F.3d 1126, 1130 (10th Cir. 2007) (alterations in original)
> (*quoting Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 642
> (2d Cir. 2005)).

*New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 -332 (5th Cir.

2008).

There is no Ninth Circuit precedent on the issue of whether complete

preemption exists under the ICCTA in the context of state law adverse possession

claims to railroad property.  However, the Ninth Circuit does provide a test for

determining what weight to give the Surface Transportation Board's interpretation

of statutes it administers:

> Congress gave the Board primary authority for enforcement of the
> Interstate Commerce Act. *Fulfillment Servs., Inc. v. United Parcel
> Serv., Inc.*, 528 F.3d 614, 616–17 (9th Cir. 2008). "Where there is a
> challenge to the agency's interpretation of the statute that it
> administers, we apply the analytical framework set forth in *Chevron*
> [.]" *DHX, Inc. v. Surface Transp. Bd.*, 501 F.3d 1080, 1086 (9th Cir.

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 7

2007) (internal citation omitted). "'If the intent of Congress is clear ... [we] must give effect to the unambiguously expressed intent of Congress.'" *Id. (quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781– 82, 81 L.Ed.2d 694 (1984)). "If however, the meaning of the statute is ambiguous, 'the question for the court is whether the agency's answer is based on a permissible construction of the statute.' " *Id. (quoting Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782). "'[T]he court does not simply impose its own construction on the statute....'" *Id. (quoting Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782).

*Pacific Indem. Co. v. Atlas Van Lines, Inc*., 642 F.3d 702, 708-09 (9th Cir. 2011); see also *Association of American Railroads v. South Coast Air Quality Management Dist*., 622 F.3d 1094, 1097 (9th Cir. 2010) ("We find further guidance on the scope of ICCTA preemption from the decisions of the Surface Transportation Board ("STB"), to which we owe *Chevron* deference, *DHX*, 501 F.3d at 1086, and from decisions of our sister circuits.").

The Surface Transportation Board recently clarified its position with respect to adverse possession causes of action. *Jie Ao and Xin Zhou – Petition for Declaratory Order*, FD 35539, 2012 WL 2047726 (STB served June 6, 2012). Interestingly, the Surface Transportation Board decided a Washington State adverse possession claim concerning a certain parcel D.

With regard to Parcel D, we find that Petitioners' state law adverse possession claim is federally preempted, regardless of whether this case is analyzed as "categorical" preemption (preemption that occurs when a state or local regulation is preempted on its face), or as "as applied" preemption (based on the degree of interference that a particular action would have on railroad transportation).

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 8

*Id* at *1.  The Board reasoned:

> Ao-Zhou's approach to preemption would permit landowners to carve off strips of railroad ROW [right of way] all over the country for non-rail use, even though the Board has not authorized the ROW to be permanently removed from the nation's rail system under Title 49. That untenable result would undermine interstate commerce and the strong federal policy in favor of retaining rail property in the national rail network, where possible.

*Id*. at *7.

> Section 10501(b) thus preempts other regulation that would unreasonably interfere with railroad operations that come within the Board's jurisdiction, without regard to whether or not the Board actively regulates the particular activity involved. The statute defines rail transportation expansively to encompass any property, facility, structure or equipment "related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use." 49 U.S.C. § 10102(9).  Moreover, 49 U.S.C. § 10102(6) defines "railroad" broadly to include track, terminal facility, ground, etc., used or necessary for transportation. The Board has interpreted state or local regulation to include state property law claims brought by non-governmental entities, where such claims would have the effect of interfering with railroad operations. *Mid-America Locomotive and Car Repair, Inc.—Petition for Declaratory Order*, FD 34599 (STB served June 6, 2005).

*Id*. at *4.

In contrast to adverse possession claims, which would permanently strip the railroads of the real property they rely upon to engage in interstate commerce and conduct their business, the Surface Transportation Board declared that certain state

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 9

and local actions would not be preempted on their face as long as they did not

prevent or unreasonably interfere with rail transportation.[1] *Id*.

> While § 10501(b) is broad and far-reaching, there are, of course, limits. For example, § 10501(b) preemption does not apply to state or local actions under their retained police powers, as long as they do not interfere with railroad operations or the Board's regulatory programs.

*Id*.

---

[1] One recent Fifth Circuit decision has applied this type of "as applied" fact specific analysis, even in the context of complete preemption. *Elam v. K.C.S. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011); *but see Franks Investment Company LLC v. Union Pacific R.R. Co.*, 593 F.3d 404, 408 (5th Cir. 2010)(en banc) (applying the same "as applied" analysis, but emphasizing it was only in the context of ordinary preemption, not complete preemption).  The *Elam* court found, based on legislative intent, that the ICCTA completely preempts state laws that "directly attempt to manage or govern a railroad's decisions in the economic realm" *Id.* at 807. In contrast, the ICCTA did not expressly preempt applicable state laws that had a "mere remote or incidental effect on rail transportation." *Id*. at 813. This type of analytical framework, when applied to the facts of this case, also supports a finding of complete preemption, as the grant of fee simple title would certainly have more than a remote effect on rail transportation.

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 10

> For state or local actions that are not preempted on their face, § 10501(b) preemption analysis requires a factual assessment of whether that action would have the effect of preventing or unreasonably interfering with rail transportation. *See Franks Inv. Co. v. Union Pac. R.R.*, 593 F.3d 404, 414 (5th Cir. 2010) (en banc). Routine non-conflicting uses, such as non-exclusive easements for at-grade crossings, are not preempted, as long as they would not impede rail operations or pose undue safety risks.

*Id*. at *6.

To be sure, Congressional intent is clear and unambiguously expressed in the preemption statute giving the Surface Transportation Board exclusive authority over rail transportation, including the facilities and property to conduct such commerce: "the remedies provided under this part with respect to regulation of rail transportation *are exclusive and preempt the remedies provided under Federal or State law*." 49 U.S.C. § 10501(b) (emphasis added).[2]

---

[2] It is not surprising that Congress would protect railroad property from diminution and assault by fifty states' laws. In a not wholly dissimilar statute, the General Right-of-Way Act of 1875, 43 U.S.C. § 934, Congressional intent was deemed plainly manifest that railroads are legally incapable of alienating their right-of-way, directly or indirectly. *Boise Cascade Corp. v. Union Pacific Railroad Co*., 454 F.Supp. 531, 533 (D. Utah 1978), *affirmed* 630 F.2d 720 (10th Cir. 1980) (a right-of-way granted by Congress cannot be diminished by conveyance, or by the doctrines of adverse possession, abandonment or boundary by acquiescence).

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 11

1    Accordingly, the Court finds that the ICCTA completely preempts this state

2    law adverse possession cause of action because not only would it interfere with

3    railroad operations, but would divest the railroad of the very property with which it

4    conducts its operations.

5    **B. DIVERSITY**

6    BNSF also argues that removal was appropriate based on diversity of

7    citizenship pursuant to 28 U.S.C. § 1441(a), noting that the amount in controversy

8    exceeds $75,000 and the parties are of diverse citizenship.  ECF No. 11 at 16-17.

9    Federal district courts have original jurisdiction in cases where (1) the amount in

10    controversy exceeds $75,000, exclusive of costs and interest, and (2) there exists

11    complete diversity of citizenship between the parties. 28 U.S.C. § 1332(a).  When

12    the complaint does not specify a particular amount of damages, "the removing

13    defendant bears the burden of establishing, by a preponderance of the evidence,

14    that the amount in controversy" exceeds $75,000.  *Sanchez v. Monumental Life Ins.*

15    *Co.,* 102 F.3d 398, 403-404 (9th Cir. 1996).  Defendants may rely on facts

16    presented in the removal petition and any "summary judgment type evidence"

17    relevant to the amount in controversy at the time of removal.  *Matheson v.*

18    *Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003)

19    ("[c]onclusory allegations as to the amount in controversy are insufficient.").

20    Moreover, the court may consider this evidence even if it was not produced with

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 12

the original notice of removal.  *Cohn*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) ("[t]he district court did not err in construing [Defendant's] opposition as an amendment to its notice of removal.")

B & S Holdings only contests the amount in controversy and contends that an appraisal suggests the value of the property to be only $49,000 and that the actual value to the parties was less than $35,000, because the sales price of the property was only 71 percent of the appraised value.  ECF No. 15 at 5.  B & S Holdings admits that the property sales contract has a holdback provision of $100,000 so as to provide incentive for it to actually accomplish the quieting of title.  *Id*.  Thus, at least based on the agreed evidence before the court, the dispute is worth $100,000 to B & S Holdings.  *See In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) ("[u]nder the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce.").  Moreover, valuation of property can be determined by the diminution of the value of the remainder which would result from the taking.  *United States v. 760.807 Acres of Land, More or Less, Situate in City and County of Honolulu, State of Hawaii*, 731 F.2d 1443, 1447 (9th Cir. 1984).  In this case, that could be even more substantial to BNSF than the $100,000 holdback valuation is to B & S Holdings.

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 13

1   The Court finds that the amount in controversy exceeds $75,000 and thus,

2   the Court has diversity jurisdiction over this suit.

3   **II.    DISMISSAL**

4   The preemptive effect of the ICCTA was a question of first impression for

5   the Ninth Circuit in 1998. *City of Auburn v. United States*, 154 F.3d 1025, 1030

6   (9th Cir. 1998).   There, the Ninth Circuit observed that all the cases cited by the

7   parties found a broad reading of Congress' preemption intent, not a narrow one and

8   concluded:

9       [G]iven the broad language of § 10501(b)(2), (granting the STB
10      exclusive jurisdiction over construction, acquisition, operation,
        abandonment, or discontinuance of rail lines) the distinction between
11      "economic" and "environmental" regulation begins to blur. For if
        local authorities have the ability to impose "environmental"
12      permitting regulations on the railroad, such power will in fact amount
        to "economic regulation" if the carrier is prevented from constructing,
        acquiring, operating, abandoning, or discontinuing a line.
13
        We believe the congressional intent to preempt this kind of state and
14      local regulation of rail lines is explicit in the plain language of the
        ICCTA and the statutory framework surrounding it. Because
15      congressional intent is clear, and the preemption of rail activity is a
        valid exercise of congressional power under the Commerce Clause,
16      we affirm the STB's finding of federal preemption.

17  *City of Auburn*, 154 F.3d at 1031 (citation and footnote omitted).

18  Granting fee simple title to B & S Holdings in this case would

19  unquestionably prevent BNSF from constructing, acquiring, and operating its

20  facilities.   Thus, whether to grant quiet title of BNSF's property under a claim of

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 14

adverse possession is a decision that necessarily involves the regulation of rail transportation.  Under the ICCTA, Congress has vested exclusive jurisdiction over the regulation of rail transportation in the Surface Transportation Board.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.   Plaintiff's Motion to Remand, ECF No. 3, is **DENIED**.

2.  Defendant BNSF Railway Company's Motion to Dismiss, ECF No. 10, is **GRANTED** with prejudice.

The District Court Executive is hereby directed to enter this Order, furnish copies to counsel, and **CLOSE** the file.

**DATED** this 11th day of September, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS ~ 15